Courtney L. Baird (SBN 234410)
clbaird@duanemorris.com
**DUANE MORRIS LLP**
865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017
Telephone:  619 744 2285
Facsimile:  619 923 3115

Lawrence H. Pockers (admitted *pro hac vice*)
lhpockers@duanemorris.com
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103
Telephone:  215 979 1000
Facsimile:  215 979 1020

Attorneys for Plaintiffs and Counterdefendants,
ARAMARK MANAGEMENT, LLC and
HPSI PURCHASING SERVICES LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARAMARK MANAGEMENT, LLC and HPSI PURCHASING SERVICES LLC, <br><br> Plaintiffs, <br><br> v. <br><br> STEVE BORGQUIST, BRENT BORGQUIST, and BEACON PURCHASING LLC f/k/a BANNER PURCHASING LLC, <br><br> Defendants. | Case No. 8:18-cv-01888-JLS-KES <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ADVERSE JURY INSTRUCTION, ATTORNEYS' FEES, AND ORDER TO SHOW CAUSE FOR DEFENDANTS' SPOLIATION AND WITHHOLDING OF ELECTRONICALLY STORED INFORMATION AND OTHER DOCUMENTS** <br><br> Hearing Date: January 15, 2021 <br> Time: 10:30 a.m. <br> Courtroom: 10A, 10th Floor <br> Judge: Hon. Josephine L. Staton <br> Action filed: October 19, 2018 <br> Discovery Cut-off: July 29, 2020 <br> Pre-Trial Conf.: Dec. 4, 2020 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 15, 2021, or as soon thereafter as the matter may be heard, before the Honorable Josephine L. Staton, Ronald Reagan Federal Building and United States Courthouse, 411 W. Fourth St., Santa Ana, CA, 92701, Courtroom 10A, 10th Floor, Plaintiffs Aramark Management, LLC ("Aramark") and HPSI Purchasing Services LLC ("HPSI") (collectively, "Plaintiffs") do hereby move the Court for an Order for an Adverse Jury Instruction, Attorneys' Fees, and Order to Show against Defendants pursuant to Federal Rule of Civil Procedure 37(e) based on Defendants' spoliation and intentional failure to preserve relevant electronic evidence, and their withholding of other documents.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place July 23, 2020 and August 6, 2020.

This motion is based on this Notice of Motion and Motion, the concurrently filed Declaration of Courtney Baird, Declaration of Kirk Hess, and any further briefs, evidence, and argument that may be presented on this motion.


Dated:  August 13, 2020

**DUANE MORRIS LLP**

*/s/ Courtney L. Baird*
Courtney L. Baird
Lawrence H. Pockers
Attorneys for Plaintiffs
ARAMARK MANAGEMENT, LLC and
HPSI PURCHASING SERVICES LLC

DM1\11260861.2

218-cv-01888 JLS-KES
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR
ADVERSE JURY INSTRUCTION, ATTORNEYS' FEES, AND ORDER TO SHOW CAUSE

1

**Table of Contents**

2

I.     INTRODUCTION ...................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND ...................................3

    A.    Overview of Claims .................................................................3

    B.    Defendants' Efforts to Stymie Discovery Concerning Their Pre-Resignation Transfer of Loyalty to Beacon ..................................4

    C.    The Forensic Examination Reveals Some – But Certainly Not All – of the Borgquists' Pre-Resignation Competitive Activities ...................................................................4

    D.    The Deposition Testimony Reveals the Borgquists' Intentional Spoliation of Evidence ..................................6

    E.    Key Dates and Data Points Relating to When the Borgquists Reasonably Should Have Foreseen Litigation. ..................................7

    F.    Defendants' Late Production of Nearly 500 Pages of HPSI Proprietary Information. ...................................................................9

III.   LEGAL STANDARD ...........................................................................10

IV.   LEGAL ARGUMENT ...........................................................................11

    A.    Defendants' Destruction of Emails and Text Messages Qualifies as Spoliation. ...................................................................11

        1.    **The E-mails And Text Messages Are ESI.** ..............11

        2.    **The ESI is Lost and Cannot be Restored or Replaced Through Additional Discovery.** ...........................12

        3.    **The ESI Should Have Been Preserved in the Anticipation or Conduct of Litigation.** ...................................13

        4.    **Defendants Failed to Take Reasonable Steps to Preserve ESI.** ...................................................................16

    B.    Defendants Acted With Intent to Deprive Plaintiffs of the ESI for Use in the Litigation. ...................................................................16

    C.    An Adverse Inference Instruction and Attorneys' Fee-Shifting Order are Warranted. ...................................................................19

V.    CONCLUSION ...................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Brewer v. Leprino Foods Co., Inc.*
Case No. CV- 1:16-1091, 2019 WL 356657 (E.D. Cal. Jan. 29, 2019)............ 11, 19

*Colonies Partners, L.P. v. Cty. of San Bernardino*
No. 518CV00420JGBSHK, 2020 WL 1496444, at *1 (C.D. Cal. Feb.
27, 2020), report and recommendation adopted, No.
518CV00420JGBSHK, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020)........... 11, 16

*Compass Bank v. Morris Cerullo World Evangelism*
104 F. Supp. 3d 1040 (S.D. Cal. 2015) ............................................................ 10, 14

*DVComm, LLC v. Hotwire Communications, LLC*
Case No. 14-5543, 2016 WL 6246824 (E.D. Pa. Feb. 3, 2016)............................. 19

*GN Netcom, Inc. v. Plantronics, Inc.*
No. 12-1318-LPS, 2016 WL 3792833 (D. Del. Jul. 12, 2016) ....................17, 19-20

*HP Tuners, LLC v. Sykes-Bonnett*
Case No. 3:17-cv-05760, 2019 WL 5069088 (W.D. Wash. Sept. 16,
2019) ..................................................................................................................... 19

*Leon v. IDX Systems Corp.*
464 F.3d at 956, 959 ................................................................................ 13, 17, 19

*Lewis v. Ryan*
261 F.R.D. at 521.................................................................................................. 19

*Lokai Holdings LLC v. Twin Tiger USA LLC*
Case No. 15-cv-9363, 2018 WL 1512055 (S.D.N.Y. Mar. 12, 2018) ................... 19

*Matthew Enter., Inc. v. Chrysler Grp. LLC*
No. 13-CV-04236-BLF, 2016 WL 2957133 (N.D. Cal. May 23, 2016)................ 12

*In re Napster, Inc. Copyright Litig.*
462 F. Supp. 2d at 1067-68.................................................................................... 13

*Porter v. City & Cty. of San Francisco, No. 16-CV-03771-CW(DMR)*
2018 WL 4215602 (N.D. Cal. Sept. 5, 2018).................................................. 12, 17

*Ronnie Van Zant, Inc. v. Pyle*
  270 F. Supp. 3d 656 (S.D.N.Y. 2017) (vacated in part on other
  grounds in *Ronnie Van Zant, Inc. v. Cleopatra Records, Inc*, 906 F.3d
  253 (2d Cir. 2018)) ................................................................................. 20

*Steves & Sons, Inc. v. JELD-WEN, Inc.*
  327 F.R.D. 96 ........................................................................................ 12

*United States v. Kitsap Physicians Serv.*
  314 F.3d 995 (9th Cir. 2002) ................................................................ 14

*WeRide Corp. v. Huang*
  No. 5:18-cv-07233-EJD, Dkt. No. 477 (N.D. Cal. Apr. 24, 2020) ........ 15

*World Courier v. Barone*
  2007 WL 1119196 (N.D. Cal. Apr. 16, 2007) ................................. 8, 13-15

**California Cases**

*CTC Global Corp v. Huang*
  No. SACV 17-02202 AG (KESx), 2019 WL 6357271, at *2 (C.D.
  Cal. Jul. 3, 2019) .............................................................................. 7, 13-14

**Regulatory Cases**

*Blumenthal Distrib., Inc.*
  ED CV 14-1926-JAK(SPx), 2016 WL 6609208 ................................... 17

*First Fin. Sec., Inc.*, No. 15-cv-1893-HRL, 2016 WL 5870218, at *3 ................. 14, 17

*Freedom Equity Group*, 2016 WL 5870218, at *3 ..................................... 19

*Hugler*, No. 16 CV 4547-FMO (AGRx), 2017 WL 8941163, at *10-12 .................... 16

*Ramos*, CV 12-1089-BRO (SPx), 2017 WL 2857523, at *5 ................................ 14, 19

*See Oppenheimer*, No. SACV 16-00018 JVS (DFMx), 2017 WL
  1807596, at *7 .............................................................................. 12, 14, 17

**Rules**

Fed. R. Civ. P. 26(e)(1) ............................................................................. 4

Fed. R. Civ. P. 34 ..................................................................................... 12

Fed. R. Civ. P. 34(a)(1) ................................................................................................ 12

Fed. R. Civ. P. 37 ........................................................................................................ 11

Fed. R. Civ. P. 37(e) ...................................................................... 11-12, 16-17, 19

Fed. R. Civ.P. 37(e)(1)-(2) ......................................................................................... 11

Fed. R. Civ. P. 37(e)(2) ............................................................................................ 16-17

Fed. R. Civ. P. 37(e)(2)(A) ......................................................................................... 16

Fed. R. Civ. P. 37(e)(2)(B) ...................................................................................... 16-17

Local Rule 37 ...................................................................................................... 1, 11-12

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR
ADVERSE JURY INSTRUCTION, ATTORNEYS' FEES, AND ORDER TO SHOW CAUSE

As set forth below, Plaintiffs only learned the details of Defendants' acts of spoliation within the last few weeks. The requested relief herein does not seek discovery sanctions; rather, it is limited to an adverse inference instruction to the jury. Given the relief requested and circumstances of the recently discovered spoliation, Plaintiffs submit the Motion is more appropriately resolved as a noticed motion before the District Court Judge. Plaintiffs are aware that this Court has, in the past, treated spoliation motions relating to ESI as subject to Local Rule 37, but given the timing of when the evidence cited herein emerged, doing so was simply not possible in these circumstances.[1] Plaintiffs respectfully submit that they should not be left without a remedy given these timing considerations, in light of the gravity of the spoliation discussed herein. To the extent the Court determines that this Motion should be resolved as discovery motion, then Plaintiffs respectfully request that the Court extend the motion cut-off deadline, only as this Motion, to allow Plaintiffs to comply with L.R. 37. Alternatively, if the Court deems this Motion more appropriately resolved through a Motion in Limine, then Plaintiffs will withdraw this Motion and renew it as a Motion in Limine.

## I.     INTRODUCTION

This Motion arises out of Defendants' intentional destruction of electronically stored information ("ESI"), and their withholding of other documents that go to the heart of Plaintiffs' claims in this case. Given the relevance of the communications destroyed, Defendants had a duty to preserve them the moment litigation was reasonably foreseeable. Notwithstanding their duty to preserve evidence, Defendants destroyed ESI thereafter, including after Plaintiffs commenced this lawsuit; after Plaintiffs propounded discovery; and even after Plaintiffs had filed a motion for sanctions relating to Defendants' failure to produce responsive documents and

---

[1] Given the timing as to discovery of the spoliation and that the deposition transcripts supporting the evidence were only recently received (Baird Dec. ¶ 7, fn. 1), Plaintiffs would not have been in a position, in any event, to bring a spoliation discovery motion within the motion cut-off in compliance with L.R. 37.

communications.

The ESI at issue consists of the following: (a) emails from the personal email accounts of Steve and Brent Borgquist (the "Borgquists"); (b) text messages from the Borgquists' cell phones; (c) the content of Brent Borgquist's Dell laptop, which he "recycled" in July 2019; (d) the contents of Brent Borgquist's iPhone 10, which he discarded in September 2019; (e) the contents of Steve Borgquist's prior iPhone, which was allegedly rendered inoperable in or about Summer 2019; and (f) certain emails in the Sent Items folder of Steve Borgquist's HPSI email box, which the weight of the evidence indicates were intentionally deleted by Steve Borgquist in order to conceal the fact that he was sending proprietary HPSI information to his personal email account, his wife's personal email account and Brent Borgquist's personal email account.

Because other custodians retained (or, in one case, appear to have been mistakenly sent) certain of the spoliated communications, Plaintiffs have a window into what the rest of the spoliated communications would have shown. The retrieved spoliated communications show how the Borgquists, partnering with (and aided and abetted by) one of HPSI's customers, Ensign Group, Inc. ("Ensign"), a publicly held company that is a member of and owns the management interest in Beacon, gathered HPSI's confidential and proprietary information and solicited HPSI's customers on behalf of their own competing venture before the Borgquists resigned their employment with Aramark. The true extent of the Borgquists' actions, however, will never be known because the Borgquists intentionally sought to deprive Plaintiffs of the use of the destroyed emails, text messages and other ESI.

In addition to the Borgquists' destruction of ESI, Defendants' prior counsel, John Lattin, Esquire, failed to produce nearly 500 pages of Plaintiffs' proprietary documents that were responsive to Plaintiffs' discovery requests and that Steve Borgquist provided to him at some point during the second half of 2018. These documents were not turned over to Plaintiffs' counsel until July 31, 2020 – nearly two

years later, and after fact discovery in this case had closed.  As a result, Plaintiffs were deprived of the right to question Defendants' witnesses and conduct further discovery related to these highly relevant documents.

Defendants' conduct, and the circumstances and timing of the spoliation, evidences an intent to deprive Plaintiffs of the use of the destroyed emails, text messages and other relevant information.  Plaintiffs request that the Court:  (1) issue an adverse inference instruction at trial that the jury <u>must</u> presume the ESI that was spoliated was unfavorable to Defendants ; (2) require Defendants to reimburse Plaintiffs for their attorneys' fees and costs associated with bringing this Motion; and (3) require Defendants and their former counsel, Mr. Lattin, to show cause why additional sanctions should not be issued with respect to the delayed production of Plaintiffs' proprietary documents.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Overview of Claims

This is a case about the former Managing Director of Operations (the equivalent of the CEO) of HPSI, Steve Borgquist, and his brother, Brent Borgquist.  For a period lasting at least the last nine months of their employment, the Borgquists transferred their loyalty from Plaintiffs to their planned competing venture, Beacon Purchasing LLC f/k/a Banner Purchasing LLC ("Beacon").  (ECF No. 24.)  The Borgquists, partnering with one of HPSI's customers, Ensign Group, Inc. ("Ensign"), a publicly held company that owns the management interest in Beacon, gathered HPSI's confidential and proprietary information and solicited HPSI's customers on behalf of their own competing venture.  (*Id*.)  The Borgquists then abruptly and simultaneously resigned on June 22, 2018 to start Beacon.  (*Id*.)  Since then, armed with HPSI's confidential and proprietary information and benefitting from their solicitations of HPSI customers on behalf of Beacon in violation of their contractual and other obligations, Defendants have targeted, solicited, and stolen Plaintiffs' customers causing significant damage to Plaintiffs' business.  (*Id*.)

### B.  Defendants' Efforts to Stymie Discovery Concerning Their Pre-Resignation Transfer of Loyalty to Beacon

The history of Defendants' efforts to stymie discovery into the Borgquists' pre-resignation activities – at least the known history through early 2020 – is set forth in the Motion to Compel Defendants to Supplement Discovery Pursuant to FRCP 26(e)(1); Submit to a Forensic Examination of Their Electronically Stored Information; and for Monetary Sanctions (the "Motion to Compel").  (ECF No. 101.)  As set forth in the Motion to Compel, Defendants' sworn discovery responses concerning their pre-resignation competitive activities, and their contention that "no responsive documents exist" concerning those activities, were proven false through third-party discovery.  (ECF No. 101 at pp. 6-9** and exhibits cited therein.)  The Motion to Compel was resolved through a stipulation of the parties signed by the Court requiring the Borgquists, among other things, to submit to a forensic examination of their ESI (the "Court-Ordered Forensic Exam").  (ECF No. 113.)

### C.  The Forensic Examination Reveals Some – But Certainly Not All – of the Borgquists' Pre-Resignation Competitive Activities

Following the Court-Ordered Forensic Exam, a third-party vendor conducted a forensic examination of the Borgquists' personal email accounts and existing electronic devices.  (Declaration of Courtney L. Baird ["Baird Dec."] ¶ 2.)  Despite the fact that more than 50 separate search terms were applied to the ESI, the searches resulted in production of fewer than 100 responsive emails, and no text messages.  (Baird Dec. ¶ 2.)

The documents produced as a result of the Court-Ordered Forensic Exam reveal that beginning in April 2017 – more than a year before he resigned from Aramark – Steve Borgquist forwarded from his HPSI email account to his personal email account and/or Brent Borgquist's personal email account various reports containing proprietary HPSI information for use in the Borgquists' planned competing business.  (*Id*. ¶ 3.)

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR
ADVERSE JURY INSTRUCTION, ATTORNEYS' FEES, AND ORDER TO SHOW CAUSE

Although the results of the Court-Ordered Forensic Exam further laid bare the falsity of the Borgquists' prior discovery responses and the extent to which they had violated their legal obligations to Plaintiffs, equally striking was what was *missing* from the results of the Court-Ordered Forensic Exam.  Plaintiffs filed this lawsuit after discovering an email that Steve had prepared on his personal (Yahoo) email address to "Jacob" (Jacob Christensen, the Borgquists' business partner and the son of Ensign's then-President and CEO, Christopher Christensen) attaching first-year revenue projections for the business that became Beacon.  (ECF. No 24; 24-3; Baird Dec. ¶¶ 4 and 16, Exh. G and T; Hess Dec. ¶12.)  The "projections" were for nine separate then-existing HPSI customers and, in reality, were based on HPSI's actual revenues with these same customers.  (*Id*.)  Although Steve Borgquist sent the email from his Yahoo email account – one of the email accounts searched as part of the Court-Ordered Forensic Exam – the email was not among the documents produced as a result of the searches.  (Baird Dec. ¶ 5.)

There were other anomalies in the search results evidenced by the content of the emails that were produced.  For example, on January 5, 2018 – approximately six months prior to their last day of employment with Aramark – Steve Borgquist forwarded a series of emails from his Yahoo email account to Brent Borgquist's personal (Gmail) account containing proprietary HPSI information for use in the Borgquists' competing business.  (Baird Dec. ¶ 3, Exhs. A-F; *see also* Hess Dec. ¶¶ 9-10.)  The text of these emails shows that they originated from HPSI's email system, and were received by Steve Borgquist on his HPSI account.  (Baird Dec. ¶ 3, Exhs. A-F.)  In each case, however, the email was sent by Steve Borgquist from his Yahoo email account to Brent Borgquist's Gmail account, but the original email Steve Borgquist forwarded the email from his HPSI account to his Yahoo account is missing.

For example, one of the emails Steve Borgquist sent from his Yahoo account to Brent Borgquist's Gmail account on January 5, 2018 was a forward of an email that

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR
ADVERSE JURY INSTRUCTION, ATTORNEYS' FEES, AND ORDER TO SHOW CAUSE

Steve received on his HPSI account on May 11, 2017.  (Baird Dec. ¶ 3, Ex. D.)  The text of the email string – where the words "Begin Forwarded Message" appear just above the May 11, 2017 email from Dean Hansen – reveals that it was forwarded by Steve Borgquist from his HPSI account to his Yahoo account at some point between May 11, 2017 and January 5, 2018.  (*Id.*)  In all cases, however, the original forward of the email by Steve Borgquist from his HPSI account to his Yahoo account was not among the documents produced as a result of the Court-Ordered Forensic Exam.  (Baird Dec. ¶ 5.)

Also missing from the results of the Court-Ordered Forensic Exam were various emails produced by third parties.  For example, following a January 19, 2018 meeting to discuss the business that became Beacon, Steve Borgquist communicated by email from his Yahoo account with Barry Port, then the COO and now the CEO, of Ensign concerning Ensign's "spend data" – *i.e.*, the amount Ensign was spending with certain suppliers who the Borgquists were soliciting as potential business partners for their planned competing venture.  (Baird Dec. ¶ 6, Ex. 6.)  Barry Port produced this email string in response to a subpoena, but it was not among the documents located or produced by Defendants as part of the Court-Ordered Forensic Exam.  (*Id.*)

### D.   The Deposition Testimony Reveals the Borgquists' Intentional Spoliation of Evidence

Plaintiffs took the depositions of Steve Borgquist, Brent Borgquist and a corporate representative of Beacon the week of July 13-17, 2020.  (Baird Dec. ¶ 7.)  Plaintiffs took Jacob Christensen's deposition on July 20, 2020. (*Id.*)  The deposition testimony revealed the following actions taken by Defendants to spoliate evidence:

- In early July 2018, after the Borgquists were no longer employed by Aramark, they both went through their personal email accounts and deleted emails relating to HPSI.  In all, the Borgquists deleted an estimated 100 or more emails.  Steve Borgquist testified that he was "surprised" when he saw the results of the Court-Ordered Forensic Exam that he "missed" deleting some of the emails that were retrieved.  (Baird Dec. ¶ 8, Exs. J-K.);

- The Borgquists admitted that they regularly texted one another and

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR
ADVERSE JURY INSTRUCTION, ATTORNEYS' FEES, AND ORDER TO SHOW CAUSE

various third parties who have been identified as witnesses in this case during the time period before and after their resignations from Aramark. The Borguists both testified that they utilized the automatic 90-day delete function for their text messages on their iPhones, and that they never changed this setting at any time, including after they received a preservation of evidence letter in early August 2018 or after this lawsuit was filed.  (Baird Dec. ¶¶ 9-10, Exs. L-N.);

• Brent Borguist used a Dell laptop during the time he was employed by Aramark working for HPSI, and after his resignation.  He testified that he "recycled" the laptop (which allegedly had not been working for some time) by leaving it in a dumpster outside the Ensign Service Center in July 2019 –nine months after the lawsuit was filed, and five months after Plaintiffs served their original discovery requests requesting production of ESI.  Brent Borguist admitted that the Dell laptop was never imaged before it was "recycled."  (Baird Dec. ¶ 11, Ex. O.);

• Brent Borguist testified that he had an older version of an iPhone (he believes it was an iPhone10) that he used while he was employed by Aramark working for HPSI, and then after his resignation.  He testified that he sold the iPhone back to the Verizon store in September 2019 -- 11 months after the lawsuit was filed, and seven months after Plaintiffs served their original discovery requests requesting production of, among other things, ESI.  Brent testified that the iPhone was never imaged before it was sold.  (Baird Dec. ¶ 12, Ex. P.);

• Steve Borguist testified that he also had an older version of an iPhone that he used while he was employed by Aramark working for HPSI, and then after his resignation.  The cell phone was allegedly inoperable.  On August 6, 2020 – after the close of discovery – Defendants' counsel revealed for the first time that the older iPhone had been located, and arrangements are underway for the iPhone to be imaged and searched by the forensic vendor.  It is unclear at this point, however, whether any data will be able to be retrieved from the older iPhone.  (Baird Dec. ¶ 13, Ex. Q.); and

• Jacob Christensen testified that the Borguists were in an "ongoing process" reporting to him that they had found additional HPSI materials on their electronic devices and that they would delete those materials as they surfaced.  (Baird Dec. ¶ 14, Ex. R.)

**E.     Key Dates and Data Points Relating to When the Borguists Reasonably Should Have Foreseen Litigation.**

As set forth *infra*, section IV.B.3, "[t]he duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."  *CTC Global Corp v. Huang*, No. SACV 17-02202 AG (KESx), 2019 WL 6357271, at *2 (C.D. Cal. Jul. 3, 2019) (internal quotation marks and citations

omitted); *World Courier v. Barone*, 2007 WL 1119196, at *1 (N.D. Cal. Apr. 16, 2007).  Here, the facts and circumstances reveal that the Borgquists surely understood well before the lawsuit was filed that litigation relating to the pre-resignation competition was likely, and that their communications relating to the formation of Beacon would be relevant to such litigation.

The Borgquists are sophisticated parties who well understood their legal obligations.  From and after the late summer of 2017, Steve Borgquist was the acting Managing Director of Operations for HPSI, the equivalent of HPSI's CEO.  (Hess Dec. ¶ 6.)  Brent Borgquist was among HPSI's most successful Purchasing Consultants, twice ranking #1 in the company sales and once ranking #3 overall during his tenure.  (Hess Dec. ¶ 7.)  The Borgquists each earned well over $100,000 on an annual basis.  (Hess Dec. ¶ 8.)

The Borgquists' own emails reveal that they understood the need to keep secret from Plaintiffs the Borgquists' planned competing business.  The subject line of Steve Borgquist's October 25, 2017 email to Jacob Christensen, which he then forwarded to Brent Borgquist, read "Projections – CONFIDENTIAL" and Steve reiterated in the text of the email to "please keep confidential."  (ECF No. 24-3; Baird Dec. ¶ 16, Ex. T.)  In that email he further stated "I have not been approaching groups at all (current duty of loyalty). . . ," which further evidences an aware of the potential for litigation. (*Id*.)  Similarly, Steve Borgquist cautioned in his January 10, 2018 email to Jacob Christensen and Brent Borgquist attaching the Beacon (then Banner) Purchasing business plan that the plan was to be kept "highly confidential."  (Baird Dec. ¶ 18, Ex. V.)  The mere fact that the Borgquists were communicating on their personal email accounts reveals an understanding that discovery of these communications by Plaintiffs would likely result in litigation.

On January 14, 2018, more than five months before he gave notice of his resignation, Steve Borgquist emailed from his Yahoo email account to Ensign's principals the form of Proprietary Information and Post-Employment Restrictions

Agreement that he and Brent Borgquist signed with Aramark.  (*Id*. ¶ 19, Ex. W.)
Days later, Steve Borgquist met with Barry Port in connection with the planning of
Beacon.  (Baird Dec. ¶ 20, Ex. X.)  The domain name for "Banner Purchasing" was
registered in January 2018.  (Baird Dec. ¶ 21, Exhs. Y-Z.)

In early 2018, the Borgquists retained counsel – their brother, Matthew
Borgquist – in connection with their negotiations with Ensign to form Beacon.  (Baird
Dec. ¶ 22, Ex. AA.)   Matthew Borgquist continuously represented the Borgquists up
through and including the time when the Operating Agreement for Beacon was signed
in early July 2018.  (*Id*.)

On July 9, 2018, Beacon entered into an agreement with Ensign Services, an
affiliate of Ensign, whereby Ensign Services agreed to provide certain "back office"
functions for Beacon.  (Baird Dec. ¶ 23, Ex. BB.)  Among the services Ensign
Services was to provide for Beacon was legal representation.  (*Id*.)

On August 3, 2018, counsel for Plaintiffs sent the Borgquists by email and
FedEx a cease and desist and preservation of evidence letter advising the Borgquists
of their "duty to preserve, and not to destroy, alter, delete, or relinquish control over to
any third party any and all copies . . . of documents or electronically stored
information."  (Baird Dec. ¶ 25, Ex. DD.)   The Borgquists responded, through their
counsel, on August 14, 2018. (Baird Dec. ¶ 26, Ex. EE.)

This lawsuit was commenced on October 19, 2018.  (ECF 1.)  In February
2019, Plaintiffs served their first set of discovery requests on Defendants seeking,
among other things, production of all documents and ESI relating to the preparation
and formation of Beacon, including the Borgquists' involvement in the same, and all
communications between the Borgquists and HPSI's customers and vendors.  (Baird
Dec. ¶ 27.)

**F.    Defendants' Late Production of Nearly 500 Pages of HPSI
       Proprietary Information.**

Steve Borgquist testified at his deposition that at some point either just prior to

or after the lawsuit was filed, he turned over to his counsel at the time – Mr. Lattin – a box of materials that Steve Borgquist had allegedly found in his garage.  (Baird Dec. ¶ 28, Ex. FF.)   The lawsuit was filed in mid-October 2018.  (ECF 1.)  Accordingly, Mr. Lattin had this box of materials in his possession no later than the end of 2018.

In Plaintiffs' First Request for Production of Documents directed to Defendants served on February 21, 2019 (the "First RFP"), Request No. 2 sought "All Aramark and/or HPSI documents in Defendants' possession, custody or control, or which Banner relied on in any way in connection with its formation or business operations, including but not limited to the information enclosed with Steve Borgquist's email dated October 25, 2017 attached hereto as Exhibit A."  (Baird Dec. ¶ 29, Ex. GG.)  The contents of the box of documents Steve Borgquist turned over to John Lattin clearly met this definition, as the documents contained therein were all "HPSI documents in Defendants' possession, custody or control."  (Hess Dec. ¶¶ 13-14.)  Defendants initially objected to Request No. 2 in their Responses and Objections served on March 25, 2019.  (Baird Dec. ¶ 30, Ex. HH.)  Following a meet and confer, Defendants supplemented their response to Request No. 2 in verified responses served on June 6, 2019.  (Baird Dec. ¶ 31, Ex. II.)  In their supplemental response, Defendants swore and Mr. Lattin affirmed by signing that "no responsive documents exist" in response to Request No. 2 of the First RFP.  (*Id.*)  Plaintiffs only learned about the box of documents turned over to Mr. Lattin during Steve Borgquist's deposition on July 13, 2020.  (Baird Dec. ¶ 28, Ex. FF.)   Defendants produced the contents of the box of documents on July 31, 2020, after discovery closed.  (Baird Dec. ¶ 28.)

### III.   LEGAL STANDARD

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve [evidence,] ... in pending or reasonably foreseeable litigation." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1051-52 (S.D. Cal. 2015) (citing *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir.

2002)).

Federal Rule of Civil Procedure 37 authorizes the Court to sanction non-adherence to discovery rules, including spoliation of evidence.  *See* Fed. R. Civ. P. 37(e); *Colonies Partners, L.P. v. Cty. of San Bernardino*, No. 518CV00420JGBSHK, 2020 WL 1496444, at *1 (C.D. Cal. Feb. 27, 2020), report and recommendation adopted, No. 518CV00420JGBSHK, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020). (report and recommendation, adopted by District Court, recommending an adverse inference instruction and attorneys' fee shifting award).[2]  Before determining the appropriate sanctions, Rule 37(e) requires the Court to assess the following four criteria:  (1) whether the information qualifies as ESI; (2) whether the ESI is "lost" and "cannot be restored or replaced through additional discovery"; (3) whether the ESI "should have been preserved in the anticipation or conduct of litigation"; and (4) whether the responding party failed to take reasonable steps to preserve the ESI.  Fed. R. Civ. P. 37(e); *see also Brewer v. Leprino Foods Co., Inc.,* Case No. CV- 1:16-1091, 2019 WL 356657, at *8 (E.D. Cal. Jan. 29, 2019) (quotations omitted).  Once a court finds spoliation, sanctions are appropriate if the court finds "prejudice ... from loss of the information" or "that the party acted with the intent to deprive another party of the information's use in the litigation."  Fed. R. Civ.P. 37(e)(1)-(2).

## IV.    LEGAL ARGUMENT

### A.    Defendants' Destruction of Emails and Text Messages Qualifies as Spoliation.

#### 1.    The E-mails And Text Messages Are ESI.

The emails stored in the smborgquist@yahoo.com and brentborgquist@gmail.com e-mail accounts, the text messages and other information

---

[2] As noted in *Colonies Partners*, Courts in this District are divided on whether the 2015 Amendments to the Federal Rules of Civil Procedure foreclose Courts from also relying on their traditional inherent powers to sanction discovery misconduct. *Colonies Partners*, 2020 WL 1496444, at footnote 2.  For purposes of this Motion, Plaintiffs only seek sanctions under Rule 37.

stored on the Borgquists' iPhones, and the information stored on Brent Borgquist's
Dell laptop all constitute ESI for purposes of the Rule 37 analysis. *See Oppenheimer*,
No. SACV 16-00018 JVS (DFMx), 2017 WL 1807596, at *7 ("Because the text
messages and the e-mails are electronically stored information . . . this Court needs to
apply Rule 37(e)."); *see also* Committee Notes on 2006 Amendments to Federal Rule
of Civil Procedure 34 ("Rule 34(a)(1) is intended to be broad enough to cover all
current types of computer-based information").

> ## 2.     The ESI is Lost and Cannot be Restored or Replaced Through Additional Discovery.

Defendants cannot reasonably dispute that the ESI has been lost and cannot be
restored or replaced through additional discovery.  To be sure, "[i]nformation is lost
for purposes of Rule 37(e) only if it is irretrievable from another source, including
other custodians." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 107
(E.D. Va. 2018).  In practice, this means that emails and text messages are lost when
they are "deleted, were not part of another party's production, and are now
irretrievable." *Id.; see also Porter v. City & Cty. of San Francisco, No. 16-CV-03771-
CW(DMR),* 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018) (finding that call could
not be restored or replaced when "the only entity that maintained a copy of the call . . .
erased it"*); Matthew Enter., Inc. v. Chrysler Grp. LLC,* No. 13-CV-04236-BLF, 2016
WL 2957133, at *1 (N.D. Cal. May 23, 2016) (finding emails lost under Rule 37(e)
when business "made no effort to preserve communication" and did not complain
when "outside vendor storing the [] communications deleted them automatically").

Here, the Borgquists admit that they systematically deleted emails from their
personal email accounts; Brent Borgquist never deactivated the automatic text
message delete functions on his iPhone, even after litigation was commenced (and to
this day); and discarded electronic devices (at least one iPhone and Brent Borgquist's
Dell laptop) in the summer of 2019, while the litigation was pending and months after
Plaintiffs had served discovery seeking their ESI. *See, supra*, Section II.D.  The

Borgquists admit that they emailed and texted one another and various third parties who have been identified as witnesses in their initial disclosures.  (Baird Dec. ¶ 9.)

At the very least, their emails and text messages to one another – including those they sent/received during the critical period leading up to their resignations of employment with Aramark – and the emails that Steve Borgquist sent from his HPSI account to his Yahoo account are irretrievably lost.

Moreover, Plaintiffs have diligently pursued third-party discovery in this case. While certain third parties have produced some communications they exchanged with the Borgquists, numerous other third parties have reported that they no longer had responsive communications.  (Baird Dec. ¶ 15, Ex. S.)

### 3.    The ESI Should Have Been Preserved in the Anticipation or Conduct of Litigation.

"The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."  *CTC Global Corp*, No. SACV 17-02202 AG (KESx), 2019 WL 6357271, at *2 (internal quotation marks and citations omitted); *World Courier v. Barone*, 2007 WL 1119196, at *1 (N.D. Cal. Apr. 16, 2007). "As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which [he or she] knows or reasonably should know is relevant to the action" or "'may be relevant to future litigation.'" *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d at 1067-68 (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003); *Leon*, 464 F.3d at 956, 959 (employee failed to preserve ESI on his work laptop and was under duty to do so); *Oppenheimer*, No. SACV 16-00018 JVS (DFMx), 2017WL 1807596, at *11 (discussing city's policy of deleting emails after 180 days and finding duty to preserve where litigation was anticipated).

Routine destruction constitutes spoliation where a party "had 'some notice that the documents were potentially relevant' to the litigation before they were

destroyed[.]"  *See Kitsap Physicians Serv.*, 314 F.3d at 1001; *Ramos*, CV 12-1089-BRO (SPx), 2017 WL 2857523, at *5; *Compass Bank*, 104 F. Supp.3d at 1052.

Both entity and individual defendants can be under a duty to preserve, and therefore culpable for spoliation of ESI, even if one or the other is directly responsible for the destruction of evidence. *See First Fin. Sec., Inc.*, No. 15-cv-1893-HRL, 2016 WL 5870218, at *3 (imposing adverse inference and monetary sanctions against defendant employer that failed to take reasonable steps to preserve employees' text messages); *Oppenheimer*, No. SACV 16-00018 JVS (DFMx), 2017 WL 1807596, at *7, *10-13 (imposing adverse inference sanction against city where city employee deleted ESI after litigation had commenced).

Here, there are two separate timelines relating to Defendants' destruction of ESI.  First, Defendants admit that they destroyed ESI *after* litigation was commenced by not deactivating the automatic text message delete function on their iPhones; by recycling Brent Borgquist's Dell laptop in July 2019; and by discarding Brent Borgquist's iPhone 10 in September 2019.  *See*, *supra* Section II.D.  Defendants (including Beacon) had a duty to preserve all of these categories of ESI while the litigation was pending.  *See, supra*, cases cited in this section.

In addition, the Borgquists had a duty to preserve ESI even before litigation was commenced.  They violated that duty when they intentionally deleted emails from their personal email accounts and continued the automatic delete function on their text messages for the period after litigation was reasonably foreseeable.  *CTC Global Corp v. Huang*, No. SACV 17-02202 AG (KESx), 2019 WL 6357271, at *2 (C.D. Cal. Jul. 3, 2019) ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."  (internal quotation marks and citations omitted); *World Courier v. Barone*, 2007 WL 1119196, at *1 (N.D. Cal. Apr. 16, 2007).

Plaintiffs respectfully submit that the facts and circumstances set forth herein

demonstrate that the Borgquists should have reasonably anticipated litigation **no later than January 2018**.  The evidence establishes that the Borgquists circulated their business plan for Beacon that month (and deemed it to be "highly confidential" and Steve noted his "duty of loyalty" to Plaintiffs); ramped up the pace at which they exchanged proprietary HPSI information on their personal email accounts; sent Ensign's principals a copy of their contracts with Aramark; registered the domain name for Banner Purchasing; and met with Ensign's representatives to discuss their planned competing business.  *See, supra* Sections II.C and II.E.   Shortly thereafter, by no later than March 2018, the Borgquists retained counsel to represent them in connection with their negotiations with Ensign.  *Id.*  The Borgquists were (and are) sophisticated parties.  The fact that they took the measures they did to hide their activities (communicating on their personal email accounts; labeling their projections and business plan as "confidential" and "highly confidential"; engaging after-the-fact in the mass deletion of emails from their personal email accounts; etc.) is highly probative of their state of mind, and their recognition that:  (a) the surreptitious planning and transfer of loyalty to a competing business would likely result in litigation; and (b) the communications they were deleting would be relevant in such litigation.  *See WeRide Corp. v. Huang*, No. 5:18-cv-07233-EJD, Dkt. No. 477 (N.D. Cal. Apr. 24, 2020) (finding that terminating sanctions were appropriate as to Defendant Huang under FRCP 37(e) for spoliation, noting with respect to the date when the duty to preserve attached that:  "Here, AllRide created the kun.huang@allride.ai email account and the test@allride.ai email account, which Huang accessed, in July 2018 while he was still employed by WeRide. He attempted to recruit WeRide employees to join AllRide while still employed by WeRide. WeRide terminated his employment for soliciting WeRide employees on July 31, 2018.  Over the next two days, he conducted internet searches for the consequences of soliciting employees. In such circumstances, a reasonable person would understand that litigation was foreseeable as of July 31, 2018.").

### 4.   Defendants Failed to Take Reasonable Steps to Preserve ESI.

Once aware of their duty to preserve ESI in anticipation of ligation, parties must take reasonable steps to preserve ESI.  Fed. R. Civ. P. 37(e).  A party is then "required to suspend any existing policies related to delating or destroying files and preserve all relevant documents related to the litigation."  *Colonies Partners*, No. 518CV00420JGBSHK, 2020 WL 1496444, at *8 (citing *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012)).

The evidence demonstrates that Defendants took no steps to preserve the ESI at issue.  Even after litigation was commenced, when Defendants had engaged outside counsel and had the benefit of Ensign Services' in-house legal department, Defendants continued deleting their text messages; discarded at least one of their cell phones; and "recycled" Brent Borgquist's Dell laptop.  Defendants have no legitimate defense or explanation for their failure to preserve the ESI at issue.

### B.   Defendants Acted With Intent to Deprive Plaintiffs of the ESI for Use in the Litigation.

Under FRCP 37(e)(2), the Court must determine whether Defendants "acted with the intent to deprive [Plaintiffs] of the information's use."  Fed. R. Civ. P. 37(e)(2).  If so, the Court may: (1) "presume that the lost information was unfavorable to the party"; (2) "instruct the jury that it may or <u>must</u> presume the information was unfavorable to the party"; or (3) "dismiss the action or enter a default judgment."  Fed. R. Civ. P. 37(e)(2)(A)–(C). "Courts should exercise caution, however, in using the measures specified in (e)(2). . . . The remedy should fit the wrong, and the severe measures authorized by the subdivision should not be used when the information lost was relatively unimportant or lesser measures such as those specified in (e)(1) would be sufficient to redress the loss."  Adv. Comm. Notes to 2015 Amendment of Rule 37(e)(2); *Hugler*, No. 16 CV 4547-FMO (AGRx), 2017 WL 8941163, at *10-12 (denying plaintiff's request for terminating sanctions but granting request that defendants be precluded from using certain ESI evidence).

To determine whether a sanction is appropriate under Rule 37(e)(2), the Court must examine intent.  Fed. R. Civ. P. 37(e)(2)(B); Fed. R. Civ. P. 37(e); Adv. Comm. Notes to 2015 Amendment; *Oppenheimer*, No. SACV 16-00018 JVS (DFMx), 2017 WL 1807596, at *12-13; *Porter v. City & County of San Francisco*, No. 16-cv-03771, 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018).

Rule 37(e) does not define "intent," but courts have found that a party's conduct satisfies the Rule 37(e)(2) "intent requirement where the evidence shows or it is reasonable to infer[] that the [] party purposefully destroyed evidence to avoid its litigation obligations." *Porter*, No. 16-cv-03771, 2018 WL 4215602, at *3 (citing *First Fin. Sec., Inc.,* No. 15-cv-1893-HRL, 2016 WL 5870218, at *3).

Intent may be inferred if a party is on notice that documents were potentially relevant and fails to take measures to preserve relevant evidence, or otherwise seeks to "keep incriminating facts out of evidence."  *See Leon*, 464 F.3d at 959; *First Fin. Sec., Inc.*, No. 15-cv-1893-HRL, 2016 WL 5870218, at *3; *Blumenthal Distrib., Inc.,* ED CV 14-1926-JAK(SPx), 2016 WL 6609208, at *17-19 (finding party acted willfully and in bad faith even though it was unclear from the record whether someone intentionally or unintentionally deleted the relevant emails after the party failed to implement a litigation hold, had control over relevant evidence and a duty to preserve it, and misrepresented and delayed searches for the ESI).  Courts also consider the timing of the document loss when evaluating intent.  *See GN Netcom, Inc. v. Plantronics, Inc.*, No. 12-1318-LPS, 2016 WL 3792833, at *7 (D. Del. Jul. 12, 2016).

Here, the timing and scope of Defendants' spoliation leads to the inexorable conclusion that Defendants intended to deprive Plaintiffs of the use of the ESI in the litigation.  The Borgquists' spoliation of the emails in their personal email accounts was without question designed to prevent Plaintiffs from ever discovering the scope and extent of their actions in violation of their legal obligations.  While the Borgquists' recollections were hazy at their depositions when it came to even the most basic details of the planning of their competing business, they each had a clear

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR
ADVERSE JURY INSTRUCTION, ATTORNEYS' FEES, AND ORDER TO SHOW CAUSE

recollection that the email deletion occurred in early July 2018.  (Baird Dec. ¶ 8, Exs. J-K.)

First, the alleged timing of the deletion – early July 2018,  just before they received the cease and desist and preservation of evidence letter – appears to be a made-for-spoliation-motion recounting of events.  Second, the undisputed facts further undermine the Borguists' anticipated defense that they deleted this information in order to comply with their post-employment confidentiality obligations to HPSI.  By July 2018, the Borgquists had already used the proprietary information that they had taken in order to benefit their competing venture.  For example, Jacob Christensen testified that he met with the Borgquists in October 2017 to discuss the business that became Beacon (Baird Dec. ¶ 17, Ex. U.)  At this meeting, Steve Borgquist reviewed with Christensen the email that Steve prepared on his Yahoo email account attaching first-year revenue projections for the business that became Beacon.  (Baird Dec. ¶¶ 16-17, Exs. T-U.)   The "projections" were for nine separate then-existing HPSI customers and, in reality, were based on HPSI's actual revenues with these same customers.  (*Id*.; *see also* Baird Dec. ¶ 4, Ex. G.)  These same "projections" (based on HPSI's actual revenues) were part of the Beacon (then Banner) Purchasing business plan that Steve Borgquist sent to Brent Borgquist and Christensen in January 2018.

These facts demonstrate that the Borgquists had no compunction about keeping (and using) HPSI's Proprietary Information for their own ends.  They deleted this information in an attempt to prevent Plaintiffs from discovering it, not because they suddenly decided to honor their obligations.

With respect to the remainder of the spoliated ESI, Defendants have no explanation whatsoever for their actions.  Defendants were on notice no later than February 2019, when they received Plaintiffs' initial discovery requests, that Plaintiffs were seeking production of all documents and ESI relating to the preparation and formation of Beacon, including the Borgquists' involvement in the same, and all communications between the Borgquists and HPSI's customers and vendors.  (Baird

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR
ADVERSE JURY INSTRUCTION, ATTORNEYS' FEES, AND ORDER TO SHOW CAUSE

1  Dec. ¶ 29, Ex. GG.)  After that time, the Borgquists continued automatically deleting

2  their text messages; "recycled" Brent Borgquist's Dell laptop; and discarded (at the

3  very least) one of the Borgquists' iPhones.  Under these circumstances, intent to

4  deprive Plaintiffs of the ESI contained on those media for use in the litigation may be

5  inferred.  *See Leon*, 464 F.3d at 959.

6        **C.**    **An Adverse Inference Instruction and Attorneys' Fee-Shifting Order**

7             **are Warranted.**

8        In order for the Court to impose an adverse inference the moving party must

9  establish that: "(1) the party having control over the evidence had an obligation to

10  preserve it; (2) the records were destroyed with a culpable state of mind; and (3) the

11  destroyed evidence was relevant to the party's claim or defense." *Lewis*, 261 F.R.D. at

12  521 (citations omitted); Ramos, No. CV 12-1089-BRO (SPx), 2017 WL 2857523, at

13  *13; see Fed. R. Civ. P. 37(e). The party seeking an adverse inference bears the

14  burden of showing ESI was destroyed in "bad faith." *GN Netcom, Inc.*, No. 12-1318-

15  LPS, 2016 WL 3792833, at *5.

16        Given that courts cannot "specifically examine [a party's] head" to ascertain

17  that party's intent, *see DVComm, LLC v. Hotwire Communications, LLC*, Case No.

18  14-5543, 2016 WL 6246824, at *8 (E.D. Pa. Feb. 3, 2016), they rely on circumstantial

19  evidence of intent.  *Lokai Holdings LLC v. Twin Tiger USA LLC*, Case No. 15-cv-

20  9363, 2018 WL 1512055, at *16 (S.D.N.Y. Mar. 12, 2018).  Examples of

21  circumstantial evidence of intent to deprive include the individual's awareness that the

22  ESI was relevant and awareness of the obligation to preserve the ESI.  *See HP Tuners,*

23  *LLC v. Sykes-Bonnett*, Case No. 3:17-cv-05760, 2019 WL 5069088, at *4 (W.D.

24  Wash. Sept. 16, 2019) (finding intent to deprive).  Courts also consider the "fail[ure]

25  to take any measures to preserve" the ESI "despite [a] duty to do so."  *Brewer*, 2019

26  WL 356657, at *10 (finding intent to deprive).  Courts also find an intent to deprive

27  when individuals seek to "keep incriminating facts out of evidence." *Freedom Equity*

28  *Group*, 2016 WL 5870218, at *3.  Likewise, courts evaluate the timing of the

document loss.  *See GN Netcom, Inc. v. Plantronics, Inc.*, Case No. 12-1318, 2016
WL 3792833, at *7 (D. Del. July 12, 2016) (finding intent to deprive).  Finally, courts
consider selective preservation in the intent to deprive analysis.  *See Ronnie Van Zant,
Inc. v. Pyle*, 270 F. Supp. 3d 656, 670-71 (S.D.N.Y. 2017) (vacated in part on other
grounds in *Ronnie Van Zant, Inc. v. Cleopatra Records, Inc*, 906 F.3d 253 (2d Cir.
2018)).

All of the types of circumstantial evidence of intent set forth above are present
in this case.  The Borgquists were unquestionably aware of their obligation to preserve
the ESI at issue from – at the very latest – the moment they received the cease and
desist and preservation of evidence letter on August 3, 2018.  (Baird Dec. ¶ 25, Ex.
DD.)   As set forth *supra*, Section II.D, they failed to take any measures to preserve
the ESI despite a duty to do so, and the timing of their spoliation of the HPSI-related
emails from their personal email accounts evinces an intent to keep incriminating facts
out of evidence.  Moreover, the fact that they deleted only certain emails relating to
HPSI from their personal email accounts, but not any other emails, is precisely the
type of "selective preservation" that evinces bad faith and an intent to deprive
Plaintiffs of the ESI at issue.

## V.    CONCLUSION

Accordingly, Plaintiffs request that the Court:  (1) issue an adverse inference
instruction at trial that the jury must presume the ESI that was spoliated was
unfavorable to Defendants ; (2) require Defendants to reimburse Plaintiffs for their
attorneys' fees and costs associated with bringing this Motion; and (3) require
Defendants and their former counsel, Mr. Lattin, to show cause why additional

///

///

///

///

///

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR
ADVERSE JURY INSTRUCTION, ATTORNEYS' FEES, AND ORDER TO SHOW CAUSE

sanctions should not be issued with respect to the delayed production of Plaintiffs'

proprietary documents.

Dated: August 13, 2020                    **DUANE MORRIS** LLP


                                          By:*/s/ Courtney L. Baird*
                                              Courtney L. Baird
                                              Lawrence H. Pockers
                                              Tanvi Shah
                                              Attorneys for Plaintiffs
                                              ARAMARK MANAGEMENT, LLC and
                                              HPSI PURCHASING SERVICES LLC